## In re Anonymous No. 28 D.B. 98

Disciplinary Board Docket no. 28 D.B. 1998.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

DONOHUE, *Member,* February 3, 1999—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

### I. HISTORY OF PROCEEDINGS

Respondent, [   ], was temporarily suspended by order of the Supreme Court, dated March 25, 1998, based on his conviction for making false statements to the [A] Administration in violation of 18 U.S.C. §1001. This matter was referred to the Disciplinary Board pursuant to Rule 214(f)(1), Pa.R.D.E. A petition for discipline was

filed by Office of Disciplinary Counsel against respondent on April 21, 1998. Respondent filed an answer to the petition on May 20, 1998 and admitted to the allegations contained therein.

A disciplinary hearing was held on August 31, 1998 before Hearing Committee [ ] comprised of Chair [ ], Esquire, Member [ ], Esquire, and Alternate Member [ ], Esquire. Respondent was represented by [ ], Esquire. Petitioner was represented by [ ], Esquire. A stipulation of fact and law was entered into by the parties and submitted into evidence.

The Hearing Committee filed a report on October 5, 1998 and recommended a two-year suspension retroactive to March 25, 1998, the date of respondent's temporary suspension. No briefs on exception were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of November 18, 1998.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born in 1943, was admitted to practice law in Pennsylvania in 1971, and his registered address is [ ].

(3) By order of the Supreme Court of Pennsylvania dated March 25, 1998, it was ordered that a joint peti-

tion to temporarily suspend an attorney was granted, respondent was placed on temporary suspension, and the matter was referred to the Disciplinary Board pursuant to Rule 214(f)(1), Pa.R.D.E.

(4) In an information filed in the United States District Court for the [   ] District of Pennsylvania, respondent was charged with nine counts of the offense of making false statements to the [A] Administration, an agency within the United States Department of [B] in violation of 18 U.S.C. §1001.

(5) Each count of the information is punishable by imprisonment for not more than five years.

(6) On December 18, 1997, respondent entered a plea of guilty to all nine counts of the information.

(7) On December 18, 1997, respondent was sentenced. He was placed on probation for a term of two years on each of the nine counts to run concurrently. He was placed on home detention for a period of six months commencing December 18, 1997. He was ordered to perform community service in the amount of 50 hours per year for each of the two years of probation, and he was fined $20,000 and ordered to pay a $450 assessment.

(8) Respondent's conviction stems from misconduct he engaged in as a general partner in 32 different limited partnerships formed to build and/or manage rural rental housing projects for low income tenants under the Rural Rental Housing Program. This program was administered by the [A] Administration, an agency within the United States Department of [B].

(9) Pursuant to mortgage loan agreements entered into by respondent with the United States government, each limited partnership was required to establish and maintain replacement reserve accounts for each project in order to provide funds to meet capital expenses.

(10) These replacement accounts were funded by 1 percent of the rental income being deposited by the limited partnerships.

(11) Funds placed in these accounts were restricted in that they could only be used by the limited partnership as authorized by the [A] Administration and could only be withdrawn with prior written approval of the [A].

(12) Respondent was required to submit a monthly report for each housing project in which he was required to state the current balance in the replacement reserve accounts.

(13) Beginning in 1989 or 1990, respondent became involved in a series of private real estate ventures that resulted in personal financial difficulties. Respondent accumulated approximately $150,000,000 in debt.

(14) Respondent's financial crisis grew to the point that all available funds were being used to meet the immediate needs of respondent's ventures. These funds included those in the replacement reserve accounts.

(15) At no time did respondent obtain authorization from the [A] Administration to remove monies from the accounts.

(16) At times, respondent would withdraw funds and then replace that amount at the end of the fiscal year so as to conceal his withdrawals from auditors. In December 1992, respondent did not have funds to replace those he took from the reserve accounts and wrote checks to the accounts that bounced.

(17) On nine monthly reports that respondent was required to prepare and submit to the government, he overstated the balance amounts in the reserve accounts.

(18) In 1993, after his illegal use of the reserves was discovered during an audit, respondent agreed to sell his interest in the properties. The new owners assumed the

mortgages plus any other debts. They also agreed to invest in the capital improvement of the properties and develop a plan for the funding of the reserve accounts, thereby eliminating any actual loss to the government.

(19) Respondent has no history of discipline.

(20) Respondent served his period of home detention and paid his fine of $20,000. He completed the first portion of his community service by volunteering at a literacy program.

(21) Respondent demonstrated sincere remorse for his misconduct and cooperated fully with the investigation of Office of Disciplinary Counsel.

### III. CONCLUSIONS OF LAW

Respondent's conviction constitutes an independent basis for discipline, pursuant to Rule 203(b)(1), Pa.R.D.E.

### IV. DISCUSSION

This matter is before the Disciplinary Board upon a petition for discipline charging respondent with violation of Pa.R.D.E. 203(b)(1) based on his conviction of nine counts of making false statements to a government agency in violation of 18 U.S.C. §1001.

Pa.R.D.E. 203(b)(1) provides that conviction of a serious crime shall be grounds for discipline. A serious crime is defined by the rules as a crime punishable by imprisonment of one year or more in this or any other jurisdiction. Rule 214(e), Pa.R.D.E., specifies that a certificate of conviction of an attorney for a serious crime shall be conclusive evidence of that crime. When a disciplinary action is commenced against an attorney based on a criminal conviction, the board does not engage in a retrial of the underlying facts of the crime. The board's responsibility in this situation is to determine the appropriate measure of discipline relative to the seriousness

of the crime. The focal issue is whether the attorney's character, as shown by his or her conduct, makes the attorney unfit to practice law. *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 512 A.2d 607 (1986). This test balances a concern for the public with a respect for the substantial interest of an attorney in maintaining his or her privilege to practice law. *Office of Disciplinary Counsel v. Lewis,* 492 Pa. 519, 426 A.2d 1138 (1981). It is appropriate for the board to examine any aggravating or mitigating circumstances present in this matter.

Respondent entered a plea of guilty to nine counts of making false statements to a government agency. Each count is punishable by up to five years in prison. Respondent was sentenced to six months home detention, two years of probation, a $20,000 fine, and 50 hours of community service for each of two years. Respondent was placed on temporary suspension by the Supreme Court by order of March 25, 1998.

Respondent acknowledged his culpability and entered into a stipulation with petitioner as to the relevant facts of the matter. The parties stipulated that respondent's conviction was a violation of the Rules of Disciplinary Enforcement. Respondent and petitioner agreed to a discipline of a two-year period of suspension retroactive to March 25, 1998. Even though the parties stipulated to this sanction, the board still conducts a de novo review of this matter. There are no plea agreements permitted in the disciplinary system. The board has the duty to review the case and the authority to impose a different sanction than that stipulated by the parties, if the facts so warrant.

The underlying facts of the criminal conduct as evidenced by the record demonstrate that in February 1993, respondent submitted nine monthly reports to the [A] Administration for the period of December 1992 for nine

separate projects, which reports listed higher account balances for replacement reserve accounts than the actual balances in the accounts. Respondent withdrew monies from these accounts to help meet expenses incurred relative to other business pursuits. Respondent's illegal use of the reserves was eventually discovered during an audit. Respondent was subsequently convicted and sentenced. He served his period of home detention and paid in full his $20,000 fine. He completed the first portion of his probation and the first portion of his community service, which he fulfilled by volunteering at a literacy program.

Other relevant facts of record show that respondent is 55 years of age and was admitted to practice law in Pennsylvania in 1971. Respondent has no prior history of discipline. He is very active in his community of [   ], setting up a scholarship fund for [   ] High School students, contributing time and money to youth sports organizations, and chairing the local [   ] Board. For the past 20 years, respondent has not practiced law but has been active in the area of real estate development. Despite suffering financial setbacks wherein he accumulated $150,000,000 in debt, he was able to work out agreements with various banks across the country to resolve the debts, instead of declaring personal bankruptcy. Respondent sold his interest in the [A] Administration properties and got out of that business. The new owners assumed the mortgage payments and agreed to invest in the capital improvement of the properties and develop a plan for the funding of the reserve accounts, thereby eliminating any actual loss to the government.

Respondent is remorseful for his misconduct and described the events of his conviction as the worst time of his life, as well as for his family. Respondent cooperated

fully with petitioner by entering into the stipulation, which saved petitioner the expense of calling as witnesses various government agents and accountants.

Existing case law suggests that a two-year period of suspension is an appropriate discipline for this matter. In the case of *In re Anonymous No. 103 D.B. 89,* 13 D.&C.4th 238 (1991), an attorney who was convicted of offenses involving fraudulent real estate schemes was suspended for two years retroactive to the date of the temporary suspension.

In light of the totality of the facts of this matter, as well as the case law, the board recommends a two-year period of suspension retroactive to March 25, 1998.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [    ], be suspended from the practice of law for a period of two years, retroactive to March 25, 1998.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Halpern recused himself.

Board Member Elliott did not participate in the November 18, 1998 adjudication.

## ORDER

And now, April 6, 1999, upon consideration of the report and recommendations of the Disciplinary Board dated February 3, 1999, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of two years, retroactive to March 25, 1998, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.